# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| LA'EL COLLINS, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  4:21-CV-792 |
| | § | Judge Mazzant |
| THE NATIONAL FOOTBALL LEAGUE, | § | |
| THE NATIONAL FOOTBALL LEAGUE | § | |
| MANAGEMENT COUNCIL, and | § | |
| ROGER GOODELL, | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff's Emergency Motion for Temporary Restraining Order and/or Temporary Injunction (Dkt. #9). Having considered the motion, response, and arguments of the parties, and in light of the Court's extremely limited role at this juncture, the Court finds the motion should be **DENIED.**

## BACKGROUND

On October 6, 2021, Plaintiff La'el Collins ("Collins") sued Defendants National Football League (the "NFL"), National Football League Management Council (the "NFLMC"), and Roger Goodell. Collins challenges the NFL's decision, and the confirmation by an arbitrator, of disciplinary actions against him that led to a five-game suspension without pay (*see* Dkt. #3)*.*

Collins has been an offensive right tackle for the Dallas Cowboys Football Club (the "Cowboys"), one of the 32 member clubs of the NFL, since 2015. A collective bargaining agreement (the "CBA") governs the terms and conditions of Collins' employment with the NFL (Dkt. #13 at p.3). In March 2020, the NFLMC (on behalf of the NFL) and the National Football League Players Association ("NFLPA") (on behalf of the players) entered the CBA (Dkt. #13 at

p. 3). The CBA contains the NFL's Policy and Program on Substances of Abuse (the "Policy")
"which includes provisions for mandatory testing for prohibited substances, treatment protocols
for players that use substances of abuse, and discipline for violations" (Dkt. #13 at p. 3).

Under the Policy, players agree to submit to unannounced testing during the term of their
NFL contract (Dkt. #9 Exhibit 2 § 1.3.1). A player may choose to submit his specimen for
collection away from the Club facility or stadium; however, that choice will not serve as an excuse
for failure to appear for testing (Dkt. #9 Exhibit 2 § 1.3.3). Additionally, if the NFL's Medical
Advisor determines a player has failed "to cooperate fully in the Testing process or provides a
dilute specimen," he is treated as having a positive test result (Dkt. #9 Exhibit 2 § 1.3.3). Further,
"a deliberate effort to substitute or adulterate a specimen; to alter a test result; or to engage in
prohibited doping methods" is treated as a positive test result (Dkt. #9 Exhibit 2 § 1.3.3).

If a player receives a positive result, he enters Stage One under the Policy. If the NFL
Medical Director determines that a player in Stage One "has failed to cooperate with the evaluation
process or fails to comply with his Treatment Plan," then the player advances to Stage Two
(Dkt. #9 Exhibit 2 § 1.5.1(c)). Subsequent violations of the Policy, including positive tests,
unexcused failure to appear for testing, and failure to cooperate with testing or clinical care, subject
the player to discipline, including fines and suspensions (Dkt. #9 Exhibit 2 § 1.5.2(c)). The Policy
sets forth rigid guidelines for the discipline of a player who is in Stage Two:

| | |
|---|---|
| Unexcused Failure to Appear for Testing | 1st Violation: $20,000 fine<br>2nd Violation: 1-week's salary<br>3rd Violation: 2-weeks' salary<br>4th and Subsequent: 4-weeks' salary |
| Positive Test Result | 1st Violation: 1/2-week salary<br>2nd Violation: 1 week's salary<br>3rd Violation: 2-weeks' salary<br>4th and Subsequent: 3-weeks' salary |
| Failure to Cooperate with Testing or Clinical Care | 1st Violation: 1-week's salary<br>2nd Violation: 2-weeks' salary<br>3rd Violation: 3-weeks' salary<br>4th Violation: 3-game suspension<br>5th Violation: 4-game suspension<br>6th Violation: 8-game suspension<br>7th Violation: banishment for an indefinite period of at least one calendar year |

(Dkt. #9 Exhibit 2 § 1.5.2(c)). Appendix E of the Policy outlines the "Procedure for Failure to Appear for Testing":

> When a Player fails to appear for testing, the Parties, in consultation with the Medical Advisor, will determine the nature of the failure and the degree of the Player's culpability. If the failure is not excusable but does not reflect a deliberate effort to evade or avoid testing, the Player will be subject to the discipline set forth in Section 1.5.2(c). . . . Deliberate efforts to substitute or adulterate a specimen, alter a Test Result, evade or avoid testing or engage in prohibited doping methods will be subject to the discipline set forth in Section 1.3.3 of the Policy.

(Dkt. #9 Exhibit 2, App'x. E).

Due to violations of the policy, Collins advanced to Stage Two on December 10, 2019 (Dkt. #13 Exhibit 1-A). During the subsequent offseason, Collins "repeatedly provided the Collection Vendor with international location information without the required supporting documentation . . . [and] on at least one occasion [Collins] provided location information that later proved to be false" (Dkt. #13 Exhibit 1-A). The NFL also determined that on at least three occasions Collins failed to fully cooperate with testing (Dkt. #13 Exhibit 1-A). Consequently, the NFL suspended Collins for the first four games of the 2020 regular season (Dkt. #13 Exhibit 1-A). However, before the suspension started, Collins appealed the decision and on July 14, 2020, the NFL agreed to resolve his appeal by allowing him to pay a fine in lieu of serving the four-game suspension (Dkt. #13 Exhibit 1-A). Pursuant to the July 14, 2020 agreement, Collins remained in Stage Two (Dkt. #13 Exhibit 1-A).

On August 26, 2020, Collins received "Marijuana and Dilute" positive tests[1] (Dkt. #13 Exhibit 1-A). On at least three other occasions during the 2020 NFL season, Collins failed to appear for testing (Dkt. #13 Exhibit 1-A). Collins also had another "Marijuana and Dilute" positive test result (Dkt. #13 Exhibit 1-A). Due to these violations, Collins was assessed with a "½ week

---

[1] A "dilute specimen" is the equivalent of a Positive Test under Section 1.3.3 of the Policy (Dkt. #9 Exhibit 2, App'x. A).

3

fine" for the positive test results, and a $20,000 fine for failing to appear for testing (Dkt. #13 Exhibit 1-A).

Nevertheless, Collins again failed to appear for toxicology appointments scheduled on November 9, November 14, and November 16, 2020 (Dkt. #13 Exhibit 1-B). On November 25, 2020, Collins appeared for testing (Dkt. #13 Exhibit 1-B). However, the collector's notes indicated that during the appointment, Collins asked to speak with the collector "man to man" and asked the collector if there was something that "we could do" (Dkt. #13 Exhibit 1-G). According to the collector, Collins offered him $5,000, and later $10,000 (Dkt. #13 Exhibit 1-G). Collins again failed to appear for testing on December 5, December 9, December 10, and December 14, 2020 (Dkt. #13 Exhibit 1-B).

On January 6, 2021, the NFL suspended Collins for five games after finding that Collins violated the Policy's drug test requirements (Dkt. #3 ¶ 35). Collins timely appealed the punishment on January 7, 2021, and a hearing was held before an independent arbitrator on August 31, 2021 (the "Hearing") (Dkt. #3 ¶ 37). At the Hearing, the NFL represented that Collins had previously received a four-game suspension in December 2019 based on violations of the Policy (Dkt. #3 ¶ 38).

On September 9, 2021, the arbitrator upheld the five-game suspension (Dkt. #3 ¶¶ 41, 44). The arbitrator did not reach the issue of whether Collins also engaged in an intentional effort to evade or avoid testing by his failures to appear (Dkt. #13 Exhibit 3). Instead, the arbitrator's decision was based on the attempted bribery, "without consideration of this second set of violations of the Policy" (Dkt. #13 Exhibit 3 ¶ 5.21). Citing to Section 1.3.3 of the Policy, the arbitrator found that suspension was a reasonable punishment for the alleged bribery because it was "the next logical progression from prior discipline" (Dkt. #3 ¶ 42).

4

On September 14, 2021, Collins submitted a request for reconsideration of the arbitrator's decision and notice of appeal (Dkt. #3 ¶ 45). The next day, the hearing officer denied the motion for lack of jurisdiction (Dkt. #3 ¶ 45).

Collins brought suit on October 6, 2021 in Collin County, Texas, requesting injunctive relief (Dkt. #1 Exhibit 1).[2] The NFL removed the case to federal court that same day (Dkt. #1). On October 7, 2021, Collins filed the present motion (Dkt. #9). The same day, Defendants filed a response (Dkt. #13). On October 8, 2021, the Court held a temporary injunction hearing (*see* Dkt. #10).

## LEGAL STANDARD

A plaintiff seeking a temporary restraining order must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that he will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

The movant has the burden of introducing sufficient evidence to justify the granting of a preliminary injunction or temporary restraining order. *PCI Transp. Inc. v. Fort Worth & W.R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005). The party seeking relief must satisfy a cumulative burden of proving each of the four elements before a temporary restraining order or preliminary injunction can be granted. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). Injunctive relief is an extraordinary remedy that requires the applicant to unequivocally show the need for its issuance. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). Therefore, denial of a temporary restraining order will be upheld where the movant fails to

---

[2] While Collins has an opportunity to re-plead upon removal to federal court, he has not done so yet. Thus, the operative complaint is the petition originally filed in state court (*see* Dkt. #3).

sufficiently establish any one of the four criteria. *Black Fire Fighters Ass'n v. City of Dall.*, 905 F.2d 63, 65 (5th Cir. 1990).

Because this request for a temporary restraining order reaches the Court following a final arbitrator decision, the Court's review of that decision is "extremely deferential." *Teamsters Loc. No. 5 v. Formosa Plastics Corp.*, 363 F.3d 368, 371 (5th Cir. 2004). All doubts are resolved in favor of upholding the award. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994). If the Court "determine[s] that the arbitrator has acted within the ambit of his authority as set by an arguable construction and application of the CBA, [it] ha[s] no authority to reconsider the merits of the arbitration award." *Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Loc. 767*, 253 F.3d 821, 824 (5th Cir. 2001). This is true "even if the parties argue that the award is based on factual errors or on misinterpretation of the CBA." *Id.* So long as "the arbitrator is not fashioning 'his own brand of industrial justice,' the award cannot be set aside." *Teamsters*, 363 F.3d at 371 (citations omitted); *see, e.g.*, *HMC Mgmt. Corp. v. Carpenters Dist. Council*, 750 F.2d 1302 (5th Cir. 1985).

## ANALYSIS

Collins asserts that he can show: (1) a substantial likelihood on the merits; (2) irreparable harm; (3) that the harm he will suffer outweighs any potential injury the NFL may suffer; and (4) that the public interest supports granting an injunction (Dkt. #9). The NFL counters that Collins cannot meet any of these requirements (Dkt. #13). The Court will consider each element in turn.

## I.   Substantial Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a movant must demonstrate is a substantial likelihood of success on the merits. However, a movant need not prove his case with absolute certainty. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991). "A

reasonable probability of success, not an overwhelming likelihood, is all that need be shown for preliminary injunctive relief." *Casarez v. Val Verde Cnty.*, 957 F. Supp. 847, 858 (W.D. Tex. 1997).

Collins asserts breach of contract and fraudulent misrepresentation claims. Specifically, he argues the NFL breached the CBA when it allegedly disregarded the proper sanctions for violations enumerated in the 2020 Policy and suspended Collins from five NFL games (Dkt. #3 ¶¶ 48–50). He further argues that, at the Hearing, the NFL intentionally misled the arbitrator by stating he had previously received a four-game suspension (Dkt. #3 ¶ 49). Collins also seeks a judgment declaring that the 2020 Policy supersedes all prior policy versions, does not authorize his suspension, and provides a player with the right to appeal any disciplinary decision under the Texas Declaratory Judgment Act (Dkt. #3 ¶ 51).

The NFL responds that Collins' breach of contract claim fails because the Court is bound by the arbitrator's findings of fact and interpretation of contractual provisions (Dkt. #13 at pp. 9– 13). Additionally, the NFL asserts he cannot show fraudulent misrepresentation because the NFL never misled the arbitrator at the Hearing (Dkt. #13 at pp. 14–16). Lastly, the NFL argues Collins cannot prevail on his claim under the Declaratory Judgment Act because he cannot establish his underlying breach of contract and fraudulent misrepresentation claims (Dkt. #13 at pp. 13–14).

At this point in the litigation, based on the evidence presented and arguments made, the Court finds that Collins cannot meet the burden of demonstrating a substantial likelihood of success on the merits for any of his claims.

### A.     Federal Arbitration Act and the Labor Management Relations Act

As an initial issue, there are limited circumstances in which a court can overturn an arbitration award. Whether a court may overturn an award depends on the federal law under which

a claim arises—the Federal Arbitration Act ("FAA") or the Labor Management Relations Act ("LMRA"). Collins argues that the Court should look to the FAA, while the NFL argues the Court is bound by the LMRA (Dkts. #9, 13) But, under either law, a court's review of an arbitration award is "extraordinarily narrow." *Int'l Chem. Workers Union 683c v. Columbian Chems. Co.*, 331 F.3d 491, 495 (5th Cir. 2003).

The FAA applies to disputes concerning individual arbitration agreements. *Id*. at 494; 9 U.S.C. §§ 1–16. Section 10 of the FAA limits a court's ability to vacate an award to four circumstances:

> (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties[3]; or (4) the arbitrators exceeded their powers.

*Id*.; 9 U.S.C. § 10(a).

Previously, in addition to the four statutory grounds, this circuit recognized that an arbitration award could be set aside on independent, nonstatutory grounds if it were "contrary to public policy" or "based upon a manifest disregard of the law." *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 353 (5th Cir. 2004). However, in 2008, the Supreme Court ruled that Section 10 provided the exclusive grounds for vacating an award under the FAA. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008); *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (confirming that manifest disregard is no longer a valid ground to set aside an award under the FAA); *Soaring Wind Energy, LLC v. CATIC USA, Inc.*, 333 F. Supp. 3d 642 (N.D. Tex. 2018) (confirming that public policy is no longer a valid ground to set aside an award under the FAA).

---

[3] Also referred to as "fundamental unfairness." *See Gulf Coast Indus. Workers Union v. Exxon Co. USA*, 70 F.3d 847, 850 (5th Cir. 1995).

On the other hand, the LMRA applies to disputes concerning CBAs. 29 U.S.C. § 185(a); *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994) (Section 301 of the LMRA "provides the requisite jurisdiction and remedies for individual employees covered under a collective-bargaining agreement between that individual's employer and the union") (citations omitted). Because this case involves arbitration under a CBA, the LMRA applies. *Morrow v. Kroger Ltd. P'ship I.*, 681 F. App'x. 377, 381 (5th Cir. 2017) ("Pre-emption occurs when a decision on the state law claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement.") (citations omitted).

Unlike the FAA, the LMRA does not contain any statutory reasons for vacating an award. Rather, courts in the Fifth Circuit have recognized that an award may be vacated only where an arbitrator exceeds his authority and fashions his own brand of industrial justice. *Delek Refining, Ltd. v. United Steel et al.*, No. 6:15-CV-00491-RWS-KNM, 2017 WL 4479615, at *5 (E.D. Tex. Feb. 7, 2017). An arbitrator does not exceed his authority so long as his decision "draws its essence from the contract." *Executone Info. Sys.*, 26 F.3d at 1320. Under the essence test, the sole question the court asks is whether the arbitrator's award is "rationally inferable" in "some logical way" from the contract. *Id.* at 1325 ("[T]he question is whether the arbitrator's award 'was so unfounded in reason and fact, so unconnected with the wording and purpose of the collective bargaining agreement as to manifest an infidelity to the obligation of an arbitrator.'"); *see also E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) ("[A]s long as an honest arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision."). For example, courts have vacated an award where an arbitrator's award

ignores the unequivocal, unambiguous language of a CBA. *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2007); *see also HMC Mgmt.*, 750 F.2d at 1304 (holding arbitrator exceeded authority where award was not based on the CBA's terms, but his personal opinion "of what was improper behavior").

Additionally, "when reviewing an arbitration award in a case arising under the LMRA, courts may still rely on the FAA for guidance." *Houston Ref.*, 2008 U.S. Dist. LEXIS 44135 at *12 (citing *Int'l Chem.*, 331 F.3d at 494). Collins raises two arguments, both enumerated under the FAA, as to why this Court should vacate the arbitrator's decision: (1) fundamental unfairness, and (2) fraud.

Collins asserted at the October 8, 2021 injunction hearing that the NFL's violation of its own agreement, its alleged misrepresentations to the arbitrator, and the inability of the Court to more broadly review the arbitrator's decision all amounted to fundamental unfairness under Section 10 of the FAA. While the Court is not obligated to rely on the FAA, the Court acknowledges that the FAA permits it to vacate an arbitration award on the ground of arbitrator misconduct where the misconduct amounts to a denial of a fundamentally fair hearing. 9 U.S.C. § 10(a)(3); *Int'l Chem.,* 331 F.3d at 496.

"A fundamentally fair hearing is one that meets the minimal requirements of fairness— adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 299 (5th Cir. 2004). However, an arbitrator enjoys wide latitude in conducting an arbitration hearing, as arbitrators "resolve[] disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials." *Forsythe Int'l., S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1022 (5th Cir. 1990). Thus, "[a] federal court may vacate an arbitrator's award

only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceeding." *Karaha Bodas Co.*, 364 F.3d at 301. Although Collins alleged fundamental unfairness at the injunction hearing, this issue was not properly briefed. Thus, based upon what the parties presented, the Court is unable to decide at this time whether the award should be vacated on the ground of fundamental unfairness.

Collins' claim of fraud is based on the same factual assertions as his claim for fundamental unfairness. To vacate an award for fraud under Section 10(a)(1), courts rely on a three-part test: (1) the fraud must not have been discoverable upon the exercise of due diligence prior to or during the arbitration; (2) the fraud materially related to an issue in the arbitration; and, (3) the fraud is shown by clear and convincing evidence. *In re Trans Chem. Ltd. & China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 304 (S.D. Tex. 1977) (citations omitted); 9 U.S.C. § 10(a)(1). "Fraud requires a showing of bad faith during the arbitration proceedings, 'such as bribery, undisclosed bias of an arbitrator, [] willfully destroying or withholding evidence' . . . 'physical threat to an arbitrator or other improper influence.'" *Smith v. Lyondell Citgo Ref. Co.*, No. H-05-1708, 2005 WL 2875306, at *1314 (S.D. Tex. Oct. 31, 2005) (citations omitted). However, the Court is not convinced, based upon the evidence before it at this stage, that Collins has shown what is required to vacate an award under Section 10(a)(1). 9 U.S.C. § 10(a)(1).

Because the Court cannot rule on whether the award may be vacated based upon the enumerated statutory or judicial grounds, the Court turns now to whether Collins has shown a substantial likelihood of success on the merits of any of his asserted claims.[4]

---

[4] Although the Court believes Collins' claims are likely preempted by the LMRA, the Court will consider the likelihood of success on the merits of his claims for purposes of analyzing whether injunctive relief is appropriate. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (holding that where state-law claim requires analysis of terms of labor agreement, court may either treat claim as a § 301 claim or dismiss claim as preempted). "In the absence of relevant statutory provisions, a court's interpretation of federal common law may be informed by state law

### B.  Breach of Contract

Collins argues the language of the 2020 Policy does not authorize his suspension. Specifically, he contends that discipline in his case should be limited to fines for failures to cooperate as listed in Section 1.5.2(c) (Dkt. #3 at p. 20). Collins asserts the arbitrator's decision rests upon the NFL's misleading assertions regarding Collins' previous Policy violations (Dkt. #3).

The Court has serious concerns regarding the NFL's conduct and the arbitrator's interpretation of the policy. When Collins received a four-game suspension, he reached an agreement with the NFL outlined in the July 14, 2020 letter (Dkt. #13 Exhibit 1-A). Under the terms of that agreement, Collins would pay a $478,470 fine instead of serving his suspension (Dkt. #13 Exhibit 1-A). Though the letter does not indicate Collins' disciplinary record would be wiped clean, the final clause states the agreement would "have no precedential value or effect and [would] not be cited or used as precedent in any other proceedings, except as required or necessary to enforce its terms" (Dkt. #13 Exhibit 1-A). Despite this express promise, the NFL used this agreement at the Hearing, not to enforce its terms, but to establish Collins' previous four-game suspension as evidence to partially support the present five-game suspension (Dkt. #13 Exhibit 2 at p. 16). Collins believes this chain of events was a misstatement of the facts that improperly influenced the arbitrator's award.

The Court also questions whether the arbitrator's interpretation of the Policy is correct. The text of Appendix E reads:

> When a Player fails to appear for testing, the Parties, in consultation with the Medical Advisor, will determine the nature of the failure and the degree of the Player's culpability. If the failure is not excusable but does not reflect a deliberate

---

principles." *Goss, et al. v. Firestone Polymers, L.L.C.*, No. 1:04-cv-665, 2005 WL 1004717, at \*9 (E.D. Tex. Apr. 13, 2005) (citation omitted).

effort to evade or avoid testing, the Player will be subject to the discipline set forth in Section 1.5.2(c).

(Dkt. #9 Exhibit 2, App'x. E). Then, in the last paragraph, it reads: "[d]eliberate efforts to substitute or adulterate a specimen, alter a Test Result, evade or avoid testing or engage in prohibited doping methods will be subject to the discipline set forth in Section 1.3.3 of the Policy" (Dkt. #9 Exhibit 2). The arbitrator found that Collins attempted to bribe the test collector to "evade or avoid testing" (Dkt. #13 Exhibit 3 § 5.10). The Court agrees that, based on this factual finding, the next step in the interpretation leads its constructor to Section 1.3.3, rather than Section 1.5.2(c).

Section 1.3.3 states:

A Player who fails to cooperate fully in the Testing process as determined by the Medical Advisor or provides a dilute specimen will be treated as having a Positive Test Result. In addition, a deliberate effort to substitute or adulterate a specimen; to alter a test result; or to engage in prohibited doping methods will be treated as a Positive Test and may subject a Player to additional discipline.

(Dkt. #9 Exhibit 2). The problem lies in the distinction between these two sentences. Collins' attempted bribery, defined by the arbitrator as "an attempt to evade or avoid testing," does not fall squarely within any of the distinctly enumerated actions that are subject to "additional discipline" under sentence two of Section 1.3.3. He did not make a deliberate effort to substitute or adulterate a specimen. He did not alter a test result. He did not engage in any prohibited doping methods.[5] The NFL does not claim otherwise, and, more importantly, the arbitrator did not find otherwise. Indeed, the arbitrator found the "basic issue [was] whether the attempted bribery occurred" (Dkt. #13 Exhibit 3 § 5.1).

To the Court, this places Collins' conduct within the ambit of the first sentence of Section 1.3.3, not the second sentence. And if a player who fails to cooperate fully with the testing process

---

[5] Under the Policy, "prohibited doping methods" is defined as: "pharmacological, chemical or physical manipulation; for example, catheterization, urine substitution, tampering, or inhibition of renal excretion by, for example, probenecid and related compounds" (Dkt. #9 Exhibit 2 § 1.3.3, n. 4).

is "treated as having a positive test result," such treatment would be disciplined under Section 1.5.2(c) of the Policy. Discipline for positive results under Section 1.5.2(c) includes only fines— not suspensions (Dkt. #9 Exhibit 2). The arbitrator made no such distinction between the two sentences, instead treating Collins' attempted bribery as conduct warranting "additional discipline" (Dkt. #13 Exhibit 3 ¶¶ 5.11–13). This interpretation does not follow logically from the plain language.

Put simply: the NFL did not give itself authority under its contract to subject a player to suspension as a type of "additional discipline" for deliberately evading or avoiding testing. Yet, the arbitrator found that it did.

Nevertheless, this Court has a "limited role" in reviewing final arbitrator awards. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). If the Court "determine[s] that the arbitrator has acted within the ambit of his authority [] set by an arguable construction and application of the CBA, [it] ha[s] no authority to reconsider the merits of the arbitration award." *Weber Aircraft*, 253 F.3d at 824. This remains true "even if the parties argue that the award is based on factual errors or on misinterpretation of the CBA." *Id.* Because the Policy is contained in a CBA, it "require[s] binding arbitration for unsettled grievances." *Misco*, 484 U.S. at 36. The relevant provisions state:

> All appeals under Section 1.5 of this Policy shall be heard by third-party arbitrators not affiliated with the NFL, NFLPA, or Clubs. . . . Any Player who . . . is subject to a fine or suspension for violation of the terms of this Policy may appeal such discipline. . . . The decision of the arbitrator will constitute a full, final, and complete disposition of the appeal and will be binding on all parties.

(Dkt. #9 Exhibit 2 at p. 46).

An arbitrator's finding is given such extreme deference because the parties "have bargained for the arbitrator's"—not the court's—"construction of their agreement." *E. Associated*, 531 U.S.

at 62. The arbitrator is the parties' "jointly designated decider," chosen to resolve issues generated by a contract's open-ended terms. FRANK H. EASTERBROOK, ARBITRATION, CONTRACT AND PUBLIC POLICY, IN ARBITRATION 1991, 65, 69 (Gladys W. Gruenberg ed., 1992). For this, "[t]he standard of review is 'among the narrowest known to the law' and flows from the [LMRA]'s 'preference for the settlement of disputes in accordance with contractually agreed-upon arbitration procedures.'" *Union Pac. R.R. Co. v. Am. Ry. & Airway Supervisors' Ass'n*, 838 F. App'x. 846, 849 (5th Cir. 2020) (quoting *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 323 (1972)).

Where a contract fails to define what conduct will subject an employee to discipline, the parties are bound by the arbitrator's decision even if the party believes the decision was unwise or wrong on the merits. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960) ("[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."). Further, even if parties "allege that the award rests on errors of fact or on misrepresentation of the contract," "[t]he courts are not authorized to reconsider the merits of an award." *Misco*, 484 U.S. at 36.

After the Hearing, the arbitrator made specific findings of fact and interpreted the contract, considering evidence and testimony from both Collins and the NFL. The arbitrator found Collins failed to appear for seven different drug testing sessions during late 2020, well after the 2020 Policy was established (Dkt. #13 Exhibit 3 ¶ 4.2). The arbitrator found that the NFL Medical Advisor sent repeated written notices to Collins, granting him the opportunity to explain his absences (Dkt. #13 Exhibit 3 ¶¶ 4.5–4.7). However, Collins made no attempt to show he sent his explanations to the Program Medical Advisor within the proper time period (Dkt. #13 Exhibit 3

¶¶ 4.6, 5.15). Further, after weighing the credibility of Collins, the NFL, and the test collector, the arbitrator determined Collins did attempt to bribe the test collector in exchange for foregoing the drug test (Dkt. #13 Exhibit 3 ¶¶ 4.8–4.9). The arbitrator specifically indicated "the persuasive evidence" was that Collins' remarks and conduct "constituted an offer of payment to make the testing regime less onerous for Mr. Collins, which would be a bribe" (Dkt. #13 Exhibit 3 ¶ 5.9).

Interpreting the Policy, the arbitrator admitted that "[a]ttempting to bribe a collector is not itemized in the Policy as a type of 'failure to cooperate with testing,'" but found that "it falls well within that category of activity" (Dkt. #13 Exhibit 3 ¶ 5.10). To support this categorical reading, the arbitrator highlighted Appendix E to the Policy (Dkt. #13 Exhibit 3 ¶ 5.10). Appendix E provides that "a failure to appear that 'is not excusable but does not reflect a deliberate effort to evade or avoid testing' will subject a Player to discipline according to the schedule of fines and suspensions set out in Section 1.5.2(c)" (Dkt. #9 Exhibit 2 App'x. E).

The arbitrator then discussed Collins' argument that "discipline in his case should be limited to fines for failures to cooperate as listed in Section 1.5.2(c)" (Dkt. #13 Exhibit 3 ¶ 5.10). Referencing the "deliberate effort" language in Appendix E, the arbitrator rejected this argument. (Dkt. #13 Exhibit 3 ¶ 5.10). Instead, the arbitrator found deliberate efforts to avoid testing are subject to sanctions under Section 1.3.3, "which refers simply to 'additional discipline'" (Dkt. #13 Exhibit 3 ¶ 5.11). The arbitrator reasoned that this broad language permitted the NFL to discipline Collins in manners not confined by the disciplinary measures articulated in Section 1.5.2(c)—but only if Collins engaged in deliberate efforts to avoid testing (Dkt. #13 Exhibit 3 ¶ 5.12).

Because Collins' attempted bribery constituted a deliberate evasion or avoidance, the arbitrator found it unnecessary to draw factual and logical distinctions between a failure to appear and failure to cooperate under Section 1.5.2 (Dkt. #13 Exhibit 3 ¶ 5.21). Rather, the arbitrator

16

concluded the five-game suspension was a sanction provided for under Section 1.3.3, which was imposed under the vague language of that provision (Dkt. #13 Exhibit 3 ¶ 5.13).

Although the arbitrator's interpretation may differ from the Court's, the award "draws its essence from the" CBA. *Misco*, 484 U.S. at 36 (quoting *United Steelworkers*, 363 U.S. at 596). The award does not derive from the arbitrator's "own brand of industrial justice." *Id.* Indeed, the arbitrator considered the arguments from both sides, outlined these arguments in his report, and analyzed the 2020 Policy (Dkt. #13 Exhibit 3). After completing this systematic approach, the arbitrator arrived at a reasonable interpretation of the 2020 Policy that stems from its text and structure (Dkt. #13 Exhibit 3). For these reasons, Supreme Court and Fifth Circuit precedent forbid this Court from second-guessing the arbitrator's factual and interpretive findings. *Misco,* 484 U.S. at 37–38 ("That a court believes an arbitrator to have committed serious legal or factual error will not justify overturning his decision, provided that the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority") (internal citations omitted); *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013); *Executone Info. Sys.*, 26 F.3d at 1320 ("In other words, we must affirm the arbitrator's decision if it is rationally inferable from the letter or the purpose of the underlying agreement.").

If the Court had greater authority to review the arbitrator's award, it would supplant its aforementioned reading of the Policy. But it does not. The line of precedent following *Misco* is clear that a district court may not disturb the arbitrator's factual findings or contractual interpretations unless the arbitrator exceeds his authority. *Citigroup Glob. Mkts.*, 562 F.3d at 358; *Forsythe*, 915 F.2d at 1020; *Exxon Corp. v. Baton Rouge Oil & Chem. Workers Union*, 77 F.3d 850, 853 (5th Cir. 1996); *Teamsters*, 735 F.2d at 906. As expressed, however, the arbitrator here conducted a detailed analysis and constructed the Policy in a reasonable manner. Though the Court

17

may disagree with the arbitrator's conclusions, such conclusions must stand. Therefore, the Court concludes the arbitrator did not interpret the CBA in a manner that would justify vacatur of the award. *See W.R. Grace & Co. v. Loc. Union 759 et al.*, 461 U.S. 757, 766 (1983).

Accepting as true the attempted bribery and deferring to the arbitrator's interpretation of the 2020 Policy, at this juncture, Collins cannot show by a substantial likelihood that the NFL breached the CBA.

### C.     Fraudulent Misrepresentation

For his fraudulent misrepresentation claim, Collins argues the NFL never suspended him prior to the Hearing, he never attempted to bribe the test collector, and the sanctions he received are improper given his conduct, which he claims was merely a failure to appear (Dkt. #9). Further, Collins alleges that "the NFL intentionally misl[ed] the arbitrator by stating [he] had previously received a four (4) game suspension," because he "has *never* been previously suspended by the NFL for any reason" (Dkt. #3 at p. 13). The NFL responds that Collins cannot succeed because the statements at the Hearing regarding Collins's prior suspensions were not false (Dkt. #13 at pp. 14, 15).

The Court finds that, based on the evidence presented thus far, Collins cannot show success on the merits by a substantial likelihood. To succeed on a claim of fraudulent misrepresentation under Texas law, the plaintiff must prove the defendant:

> (i) made a material representation that was false; (ii) knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (iii) intended to induce the movant to act upon the representation; and (iv) induced actual and justifiable reliance upon the representation by the movant that resulted in injury to the movant.

*First Sec. Bank v. W&W Farms, Inc.*, No. 2-19-CV-91-Z, 2020 WL 570814, at *9 (N.D. Tex. February 4, 2020) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d

323, 337 (Tex. 2011)).

After finding that Collins had violated the Policy on three occasions between January 28 and February 4, 2020, the NFL notified Collins by letter on February 21, 2020 that it intended to discipline him. Specifically, the NFL wrote, "you are suspended for the first four (4) games of the 2020 regular season" (Dkt. #13 Exhibit 1-A). On July 14, 2020, in exchange for Collins' withdrawal of his appeal on these suspensions, the NFL agreed to fine Collins rather than subject him to a four-game suspension (Dkt. #13 Exhibit 1-A at p. 5).

At the October 8, 2021 injunction hearing, Collins claimed that the NFL's representations to the arbitrator did not accurately reflect his past disciplinary history because he has never served a disciplinary suspension. Yet, the NFL emphasized that at the Hearing, the NFL represented to the arbitrator that "Mr. Collins was *written up* for a four-game suspension" (Dkt. #13 Exhibit 2 at p. 15) (emphasis added). As the NFL puts it, "the statements made by the NFLMC's counsel at the hearing were not false [because] [t]he undisputed evidence shows that Collins was, in fact, 'suspended for the first [4] games of the 2020 regular seasons'" (Dkt. #13 at pp. 15–16). A statement that is true cannot be the basis of a fraud claim. *See Collective Asset Partners LLC v. Schaumburg*, 432 S.W.3d 435, 443 (Tex. App.—Dallas 2014, pet. denied). Thus, the Court is not convinced Collins can show by a substantial likelihood that the NFL's statements made during the Hearing—statements based on a letter of which neither side disputes the accuracy—are patently untrue.

Moreover, the arbitrator found that "Mr. Collins previously had *received* a four-game suspension based on prior conduct" (Dkt. #13 Exhibit 3 § 5.13) (emphasis added). Additionally, at the October 8, 2021 injunction hearing, the NFL emphasized that it pointed the arbitrator to the letter in which parties agreed Collins would pay a fine in lieu of serving his sentence. Thus, even

if Collins were accurate in his contention that the NFL misrepresented his prior serving of a four-game suspension, Collins cannot show by substantial likelihood that the arbitrator relied on any misrepresentation.[6] While Collins may now disagree as to the accuracy of the NFL's statements at the Hearing, Collins did not timely raise this issue before the person who had the authority to factually decide it: the arbitrator.[7] *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 497 (Tex. 2019) ("[A] plaintiff may not 'blindly rely on a representation by a defendant when the plaintiff's knowledge, experience and background alert it to investigate the defendant's representations.'").

The Court is not willing to find that the arbitrator—privy to all the evidence in the case—was played by the NFL.  At this juncture, based on what has been presented to the Court, Collins has not met the burden of demonstrating a substantial likelihood of success on the merits of his fraudulent misrepresentation claim.

### D.  Declaratory Judgment

Pursuant to the Declaratory Judgment Act in Chapter 37 of the Texas Civil Practice & Remedies Code, Collins requests the Court declare that: (1) the 2020 Policy supersedes prior versions; (2) the Policy does not authorize Collins's suspension; (3) the Policy provides a player the right to appeal any disciplinary action; and (4) Collins is entitled to immediate reinstatement (Dkt. #3 ¶ 73). TEX. CIV. PRAC. & REM. CODE § 37. The NFL responds that Collins' claim under the Declaratory Judgment Act "fails as a matter of law" because Collins cannot show a substantial likelihood of success of his underlying, substantive claims (Dkt. #13 at pp. 13–14).

---

[6] While the arbitrator undoubtedly used the four-game suspension as progressive discipline to affirm the five-game suspension, nothing in the record indicates the arbitrator relied on any alleged assertion that Collins *served* the suspension.

[7] As Defense counsel noted at the October 8, 2021 injunction hearing, while Collins had both private and union representation at the Hearing, he never argued that Defendants concealed or misrepresented the agreement outlined in the July 14, 2020 letter.

"When a declaratory judgment action filed in state court is removed to federal court," the federal court does not apply the Texas Declaratory Judgment Act. *Smith v. Select Portfolio Servicing, Inc.*, No. 4:17-CV-753, 2018 WL 6696673, at \*15 (E.D. Tex. Dec. 20, 2018) (citations omitted). Instead, courts analyze claims under the federal Declaratory Judgment Act as the "[claim] is, in effect, converted into one brought under the federal [Act]." *Id.* Thus, the Court will treat Collins' claim as if it were brought under the federal Declaratory Judgment Act.

The federal Declaratory Judgment Act does not create an independent cause of action that would confer jurisdiction on the district court. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983). Rather, "[i]t is the underlying cause of action that is actually litigated in a declaratory judgment action." *Basye v. Wells Fargo Bank., N.A.*, No. 3-12-CV-4098-K, 2013 WL 2110043, at \*4 (N.D. Tex. May 16, 2013) (citing *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990)). If a plaintiff's underlying, substantive claims fail to state a cause of action upon which relief can be granted, the plaintiff cannot prevail on a claim for declaratory judgment. *Id*.

The declarations Collins seeks are entirely derivative of his other claims; that is, his declaratory judgment requests rely on the same arguments the Court has already considered. *See Lakeisha v. Bank of N.Y. Mellon,* No. 3:15-CV-0901-B, 2015 WL 5934439, at \*13 (N.D. Tex. Oct. 9, 2015). Because Collins did not show a substantial likelihood of success on his breach of contract and fraudulent misrepresentation claims, the Court cannot grant the requested declaratory relief. *See Scritchfield v. Mut. of Omaha Ins. Co*., 341 F. Supp. 2d 675, 682 (E.D. Tex. 2004) (dismissing a claim for declaratory relief because "[p]laintiffs would get nothing from a declaratory judg[]ment that they would not get from prevailing on their breach of contract claims.").

The Court does not foreclose the possibility that, upon amending his original petition and presenting further evidence, Collins could not prove the merits of some, or all, of his claims. Nonetheless, at this stage in the proceedings, Collins cannot meet the burden of demonstrating a substantial likelihood of success on the merits.

## II.     Substantial Threat of Irreparable Harm

Although Collins cannot show a substantial likelihood of success on the merits of his claims, the Court nevertheless analyzes the remaining elements to obtain injunctive relief. A plaintiff must demonstrate that it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). An injunction is appropriate only if the anticipated injury is imminent and not speculative. *Winter*, 555 U.S. at 22.

In addition to the four games he has already missed, Collins is faced with missing one more game[8] (Dkt. #9 ¶2). Five games is a large portion of the NFL's season, and potentially deprives Collins of "the ability to achieve individual successes and honors." *NFL Players Ass'n v. NFL*, 270 F. Supp. 3d 939, 954 (E.D. Tex. 2017) ("*Elliott*"), *rev'd and vacated on other grounds*, 874 F.3d 222 (5th Cir. 2017). As this Court has previously held, improper suspensions of professional athletes can result in irreparable harm to the player due to the limited window in which players have the opportunity to play football. *Id*. (citations omitted); *Prof'l Sports, Ltd. v. Va. Squires Basketball Club Ltd*, 373 F. Supp. 946, 949 (W.D. Tex. 1974). However, after receiving the denial of his motion to reconsider, Collins waited over two weeks before he brought suit.[9] Collins' delay

---

[8] Notably, even if the Court were to grant an injunction, the record contains no evidence indicating that the Cowboys would play Collins.

[9] Although, at the October 8, 2021 injunction hearing, Collins contended there was a reasonable basis for the delay. But, based on what parties presented to the Court, the Court is not convinced the delay was unavoidable.

weighs against his request. *Gonanies, Inc. v. Goupair.Com, Inc*., 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006).

Furthermore, Collins submitted an affidavit in which he asserted the irreparable harm he faced was the inability to play for one-third of the 2021 NFL season, resulting in a loss of one-third of his salary (Dkt. #3 at pp. 19–23). While the Court recognizes the inability to play may constitute irreparable harm, mere temporary loss of income is insufficient to support injunctive relief. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]emporary loss of income . . . does not usually constitute irreparable injury."). Collins' motion also asserts his suspension would result in loss of future income and opportunity (Dkt. #9). However, this claim too is insufficient. *See Elliott*, 296 F. Supp. 3d at 625 ("[A]ny individual honors Elliott might attain absent suspension depend on countless variables—such as the Cowboys' overall offensive performance, his opponents' defensive performance, and Elliott's health—that together render this alleged harm far too speculative to justify injunctive relief.").

Thus, the Court does not find that Collins is likely to suffer immediate and irreparable harm in the absence of the relief requested.

## III.    Balance of Hardships

When deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted).

Collins argues the harm he will suffer clearly outweighs the harm to the NFL as the suspension presents "the difference between a career in the NFL and a career-ruining suspension" (Dkt. #8 ¶ 34). The NFL counters that the harm it will suffer from an injunction is greater than that of Collins because the NFLMC and the NFLPA are entitled to the prompt and consistent

enforcement of their jointly agreed Policy designed to detect and deter substance abuse (Dkt. #13 at p. 3). The Court finds both arguments compelling.

Therefore, the Court does not find the balance of hardships weighs for or against granting an injunction.

## IV.   Public Interest

Finally, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 465 U.S. 305, 312 (1982)). This overlaps substantially with the balance-of-hardships requirement. *Id*.

The NFL argues that the public interest favors denying Collins' application for an injunction because of the preference for the finality of arbitration awards and the efforts of the NFLMC and the NFLPA to deter substance abuse (Dkt. #13 at p. 18). Collins contends that an injunction would have no adverse impact on the public interest; instead, an injunction would ensure the treatment guaranteed under the Policy (Dkt. #9 ¶ 35).

The Court does not find that the public interest weighs heavily for or against granting the relief requested.

## CONCLUSION

The Court finds an injunction is not appropriate because Collins has not satisfied the appropriate standard. The Court takes no comfort in enforcing an arbitration award that upholds a punishment that, arguably, is not permissible under the parties' CBA. But, just as the Court cannot embrace its own opinion as to the validity of Collins' claims or the out-of-bounds nature of the NFL's disciplinary decisions, the Court cannot disregard an arbitrator's reasonable construction of the parties' agreements.

Therefore, it is **ORDERED** that Plaintiff's Emergency Motion for Temporary Restraining

Order and/or Temporary Injunction (Dkt. #9) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 12th day of October, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE