**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **LA'EL COLLINS,** | § | |
| | § | **CASE NO. 4:21-cv-00792-ALM** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THE NATIONAL FOOTBALL** | § | |
| **LEAGUE (NFL), THE NATIONAL** | § | |
| **FOOTBALL LEAGUE** | § | |
| **MANAGEMENT COUNCIL, and** | § | |
| **ROGER GOODELL,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**

**<u>INTRODUCTION</u>**

Plaintiff La'el Collins, a professional football player for the Dallas Cowboys, commenced this action when he filed an Original Petition and Application for a Temporary Restraining Order ("TRO") and Temporary Injunction and Permanent Injunction in the District Court of Collin County seeking to enjoin his suspension for violating the collectively-bargained NFL Policy and Program on Substances of Abuse ("Policy").  Following removal to this Court, on October 7, 2021, the Court ordered Collins to file an amended complaint that complies with the Federal Rules of Civil Procedure and the Court's Local Rules within 30 days.  *See* DE 6.  On October 12, 2021, the Court denied Collins's request for a TRO, finding that he could not "meet the burden of demonstrating a substantial likelihood of success on the merits for any of his claims," DE 19 at 7, and could not possibly "prove the merits of some, or all, of his claims" absent an "amend[ment] [to] his original petition and presenting further evidence."  *Id.* at 22.

1

Collins has taken no further action in this case since the Court's Order denying his application to enjoin his suspension. He did not file an amended complaint in accordance with the Court's October 7 Order and he has continuously failed to respond to Defendants' inquiries regarding whether he intends to proceed with this litigation. *See* Declaration of Eric Gambrell ("Gambrell Decl."), ¶¶ 3-6. Accordingly, because Collins has failed to comply with this Court's Order or otherwise make any effort to cure the fundamental defects in his pleading, his claims should be dismissed under Federal Rules of Civil Procedure 41(b) and 12(b)(6).

## STATEMENT OF THE ISSUES

The issue for decision is whether Collins's claims should be dismissed because, as the Court determined in denying his request for a TRO, his Original Petition does not state a claim for which relief can be granted and he has failed to file an amended complaint in accordance with this Court's orders.

## BACKGROUND

### A.    The Arbitration Award Affirming Collins's Suspension

Collins is a player for the Dallas Cowboys and is subject to the terms of the Policy, which is negotiated between the NFL Management Council ("NFLMC") and the NFL Players Association ("NFLPA") and incorporated into the parties' collective bargaining agreement ("CBA"). *See* DE 3 ¶¶ 4, 5.[1]

On January 6, 2021, Collins was notified that he was being suspended for the first five games of the 2021 regular season based on a determination by the NFL that he had attempted to

---

[1] Because the 2020 Policy, Award, and arbitration hearing transcript are referenced in (and attached in part to) the Original Petition and central to its claims, the court may consider these documents in deciding Defendants' motion to dismiss without converting it into a motion for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, LTD.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts

bribe a drug test collector and failed to appear for testing on seven occasions in a five-week period. *Id.* ¶ 35; DE 15-4 (Sept. 9, 2021 Reasoned Decision and Award) ("Award"), ¶¶ 1.1-1.2.  Collins timely appealed the discipline, and a hearing was held before Arbitrator James Carter on August 31, 2021.  DE 3 ¶¶ 36-37; *see also* DE 3-2 ("2020 Policy"), § 4; Award ¶ 4.12.  Collins received discovery from the NFLMC; was represented by the NFLPA and outside counsel at the hearing; and was given the opportunity to present and cross-examine witnesses.  *See* 2020 Policy §§ 4.1, 4.3; Award ¶ 4.12; DE 15-3 (Transcript of August 21, 2021 Hearing) ("Tr.").

At the arbitration hearing, the NFLMC argued that Collins's attempted bribery and repeated failure to appear for testing constituted a failure to cooperate under the Policy, together and separately warranting a suspension.  Tr. 11:23-14:21, 256:19-257:7.  The NFLMC further argued that a five-game suspension was reasonable given that Collins had a prior history of failing to cooperate and was previously "written up for a four-game suspension" and warned that "any future failures to cooperate would result in a suspension."  *Id.* 14:22-18:1.  Collins's counsel objected to the prior discipline being admitted "to show some type of prior conduct or to show a propensity for failure to act as being inadmissible under the rules of evidence," but did not otherwise object or correct any statements about the prior discipline that he believed were inaccurate.  *Id.* 19:12-17.  The Arbitrator ruled that the prior discipline was "arguably relevant to the progressive discipline that is being suggested here" and admitted the evidence.  *Id.* 19:18-25.

---

ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference. . ."); *Stoker v. Norris Cylinder Co.*, No. 2:10-CV-583-TJW-CE, 2011 WL 4369450, at *2 (E.D. Tex. Aug. 23, 2011), *report and recommendation adopted*, 2011 WL 4370544 (E.D. Tex. Sept. 19, 2011), *aff'd sub nom. Stoker v. Trimas Corp.*, 481 F. App'x 155 (5th Cir. 2012) (considering documents from arbitration proceedings on motion to dismiss where arbitration proceedings were referenced in the complaint and central to plaintiff's claims).

In his Award, the Arbitrator credited the drug test collector's testimony regarding Collins's attempt to bribe him as consistent with his contemporaneous notes and affirmed the five-game suspension.  Award ¶¶ 5.8-5.9, 5.13.  The Arbitrator reasoned that although "attempting to bribe a collector is not itemized in the Policy as a type of 'failure to cooperate with testing' . . . it falls well within that category of activity" and subjects Collins to "additional discipline" under Section 1.3.3, which provides that deliberate efforts to substitute or adulterate a specimen, alter a test result, or evade or avoid testing may subject a player to "additional discipline."  *Id.* ¶¶ 5.10-5.11; 2020 Policy, Appendix E and § 1.3.3.  He then concluded that the five-game suspension was proportional and reasonable given that Collins had "received a four-game suspension based on prior conduct." Award ¶ 5.13.  That decision constitutes "a full, final, and complete disposition of the appeal and will be binding on all parties."  2020 Policy, § 4.2.

### B.     Collins's Lawsuit and TRO Motion

Collins brought the instant lawsuit against the NFL, the NFLMC, and Commissioner Roger Goodell challenging his discipline and the Award and requesting a declaratory judgment and injunctive relief.  DE 3.  In his Original Petition, Collins alleges that the NFL made "fraudulent misrepresentations" during his appeal hearing and that the Arbitrator misapplied the Policy in affirming his discipline.  *Id.* ¶¶ 48-50, 52-68.  In particular, Collins argues that "the NFL intentionally misle[d] the arbitrator by stating Mr. Collins had previously received a four (4) game suspension from the NFL."  *Id.* ¶ 8.  Collins further argues that the Arbitrator misinterpreted the Policy because a suspension "is not permitted for the kinds of violations Mr. Collins is alleged to have committed (i.e., positive marijuana tests and/or unexcused failures to appear for testing)."  *Id.* ¶ 49.

On October 7, 2021, following Defendants' removal of the action to this Court from the District Court of Collin County, Texas, this Court ordered Collins to amend his pleading in

accordance with the Federal Rules of Civil Procedure and the Court's Local Rules within 30 days. *See* DE 6.  That same day, Collins filed an Emergency Motion for a Temporary Restraining Order and/or Temporary Injunction ("TRO Motion," DE 9), which Defendants opposed (DE 15).  The Court held a hearing on October 8, 2021 (DE 16) and denied Collins's TRO Motion on October 12 (DE 19).  The Court concluded that based on the evidence and arguments, and "in light of the Court's extremely limited role at this juncture," each of Collins's claims was unlikely to succeed on the merits.  DE 19 at 1, 7.  Specifically, the Court found that Collins's breach of contract claim was unlikely to succeed because the Arbitrator "considered the arguments from both sides, outlined these arguments in his report, and analyzed the 2020 Policy" in reaching his determination and thus the Award "'draws its essence from the' CBA."  *Id.* at 17.  The Court also concluded that Collins cannot show a likelihood of success on the merits as to the fraudulent misrepresentation claim because the alleged statements were not false and there was no evidence that the Arbitrator relied on the statements.  *Id.* at 19-20.  The Court noted that only "upon amending his original petition and presenting further evidence" could Collins possibly "prove the merits of some, or all, of his claims."  *Id.* at 22.  Collins has not since withdrawn his Original Petition or amended it, despite this Court's October 7 Order requiring him to amend within 30 days of the date of the Order (*i.e.*, by Monday, November 8).  *See* DE 6 at 1.

## ARGUMENT

### I.      Collins Has Abandoned His Claims Requiring Dismissal Under Fed. R. Civ. P. 41(b)

Under Federal Rule of Civil Procedure 41(b), a court will dismiss claims "if the plaintiff fails to prosecute or to comply with . . . a court order."  The Court also "has broad discretion to dismiss a complaint without leave to amend where the plaintiff has previously been granted leave to amend to cure pleading deficiencies and has subsequently failed to add the requisite particularity to its claims."  *Newell v. U.S. Bank Tr. Nat'l Ass'n*, No. CIV.A. H-13-0865, 2013 WL 2422660, at

*2 (S.D. Tex. June 3, 2013) (citation omitted).  "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases." *Martinez v. Johnson*, 104 F.3d 769, 772 (5th Cir. 1997) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).

Here, Collins failed to comply with this Court's October 7 Order, which required him to amend his state court-filed petition and file an amended complaint in accordance with federal and local rules two months ago.  *See* DE 6 at 1.  Collins also has failed even to respond to multiple inquiries from counsel for Defendants regarding whether he planned to amend or withdraw his Original Petition in light of the Court's Order.  *See* Gambrell Decl. ¶¶ 3-6.  Collins has therefore clearly abandoned his claims.  *See Rodgers v. Fam. & Friends*, No. 3:08CV0962-N(BH), 2009 WL 330469, at *1 (N.D. Tex. Feb. 9, 2009) (dismissing complaint pursuant to Rule 41(b) for plaintiff's failure to comply with court order to file an amended complaint that complied with Fed. R. Civ. P. 8(a) within thirty days); *Week v. Goins*, No. 3:12-CV-1853, 2013 WL 697285, at *1 (W.D. La. Jan. 16, 2013), *report and recommendation adopted*, 2013 WL 697246 (W.D. La. Feb. 26, 2013) (dismissing complaint under Rule 41(b) for failure to amend or otherwise respond within 30 days per court order); *Bell v. Pylant*, No. CIV A 06-1400, 2007 WL 2067065, at *1 (W.D. La. June 15, 2007) (same).

Dismissal is particularly appropriate here because the Court already ruled that Collins "cannot meet the burden of demonstrating a substantial likelihood of success on the merits" of any of his claims without "amending his original petition and presenting further evidence."  DE 19 at 22.  Collins's failure to file an amended complaint, alleging additional facts and curing the deficiencies in his Original Petition, dooms his claims.  *See Smyth v. Travis*, No. 4:20-CV-047-SDJ, 2021 WL 972634, at *2 (E.D. Tex. Mar. 16, 2021) (dismissing claims with prejudice after plaintiff failed to amend her complaint to correct pleading deficiencies); *Lohmann v. J.P. Morgan*

*Chase Bank, Nat'l Ass'n*, No. 7:16-CV-00148-DAE, 2016 WL 8856643, at \*3 (W.D. Tex. Sept. 27, 2016) (dismissing claims with prejudice because "[t]he Court previously provided Plaintiff with a very clear outline of the applicable law in its previous order on [defendant's] motion to dismiss" and plaintiff's "failure to properly plead a claim amounts to a repeated failure to cure deficiencies"); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (affirming dismissal after the court "instructed [the plaintiffs] to plead their fraud claim with greater particularity, but the amended complaint was still woefully inadequate").

Accordingly, Collins's Original Petition should be dismissed pursuant to Rule 41(b) for the failure to follow the Court's Order and the failure to prosecute his case.

## II.    Collins's Claims Should Also Be Dismissed Under Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court will dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Additionally, under Rule 9(b) of the Federal Rules of Civil Procedure, to state a claim for fraud in federal court, a plaintiff is subject to heightened pleading requirements and "must state with particularity the circumstances constituting fraud." *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d 229, 235 (5th Cir. 2020).  The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009).  None of Collins's claims satisfies these basic pleading requirements.

### A.  Collins Failed To State A Claim For Breach of Contract

This Court already concluded that "Collins cannot show by a substantial likelihood that the NFL breached the CBA" under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  DE 19 at 18.  As a threshold matter, Collins failed to state such a claim because an "employee may not sue his employer under § 301 . . . unless he proves the union breached its duty of fair representation."  *Landry v. Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 850 (5th Cir. 1989) (quoting *Daigle v. Gulf State Utility Co*., 794 F.2d 974, 977 (5th Cir. 1986)).  Here, however, Collins does not (and cannot) allege that the NFLPA breached its duty of fair representation—a strict "prerequisite for recovery against . . . the employer."  *Id.*  In fact, the NFLPA is not a party to this lawsuit, for good reason: Collins throughout the arbitration was represented by independent counsel, as well as by the NFLPA, who helped him fully and fairly pursue his claims before the Arbitrator.

Having received all of the procedure that the parties bargained for under the CBA and while at all times represented by sophisticated counsel, Collins now seeks to upend an unfavorable result in federal court.  Collins's claim thus amounts to nothing more than a collateral attack on the Arbitrator's final ruling.  But, as this Court recognized, it "has a 'limited role' in reviewing final arbitrator awards."  DE 19 at 19 (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)).  Under the LMRA, "a federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law."  *NFL Mgmt. Council v. NFLPA*, (*Brady*), 820 F.3d 527, 532 (2d Cir. 2016); *see also MLB Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).  "[A]s long as the arbitrator is even arguably construing or applying the contract," the court must enforce the arbitrator's decision—even if the "court is convinced he committed serious error."  *Albemarle Corp. v. United Steel Workers*, 703 F.3d 821, 824 (5th Cir. 2013) (quoting *Misco*, 484 U.S. at 38).

8

Under the deferential standard, the court's sole job is to make sure that the Arbitrator's decisions "even arguably constru[ed] or appl[ied] the contract." *Misco*, 484 U.S. at 38.  As this Court recognized, "[a]n arbitrator does not exceed his authority so long as his decision 'draws its essence from the contract.'"  DE 19 at 9 (quoting *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994)).

Courts have consistently rejected similar attempts by NFL players to second-guess arbitration decisions upholding their discipline.  *See e.g.*, *Johnson v. NFLPA, et al.*, 820 F. App'x 51, 57 (2d Cir. 2020); *NFLPA v. NFL*, 831 F.3d 985, 998-99 (8th Cir. 2016); *Williams v. NFL*, 495 F. App'x 894, 895-98 (10th Cir. 2012); *Williams v. NFL*, 582 F.3d 863, 883-86 (8th Cir. 2009); *Holmes v. NFL*, 939 F. Supp. 517, 523-25 (N.D. Tex. 1996).  These decisions recognize that the NFL and Collins's union bargained for "final and binding" dispute resolution before an arbitrator, not in federal court.  They foreclose the extraordinary remedy Collins seeks, and therefore render it impossible for him to make the required showing for vacating the Arbitrator's award.

Far from imposing "his own brand of industrial justice," the Arbitrator here plainly "act[ed] within the scope of his authority" in applying the Policy according to its express terms.  *Brady*, 820 F.3d at 536-537 (quoting *Misco*, 484 U.S. at 38).  Indeed, this Court already ruled that the Arbitrator's award "'draws its essence from the' CBA."  DE 19 at 17 (quoting *Misco*, 484 U.S. at 36).  As the Court noted, "the arbitrator considered the arguments from both sides, outlined these arguments in his report, and analyzed the 2020 Policy."  *Id.*  Then, "the arbitrator arrived at a reasonable interpretation of the 2020 Policy that stems from its text and structure."  *Id.*

In particular, the Arbitrator determined that Collins attempted to bribe the NFL drug-test collector, having found that the collector "testified credibly that it occurred and that its intent was unmistakable."  Award ¶¶ 5.8, 5.21.  Next, the Arbitrator determined that "[a]ttempting to bribe a

collector" is a type of "failure to cooperate with testing" under the Policy. *Id*. ¶ 5.10. Construing the provisions of the Policy as addressing the amount of discipline for failure to cooperate with testing," the Arbitrator concluded that "additional discipline" may be imposed "as the next logical progression from prior discipline." *Id*. ¶ 5.11. The Arbitrator therefore concluded that "a five-game suspension has been imposed properly for the attempted bribery offense." *Id*. ¶ 5.21.

As for Collins's complaint that the NFL's counsel made inaccurate arguments about his prior discipline at the hearing, the Arbitrator found that "Mr. Collins previously had received a four-game suspension based on prior conduct." *Id*. ¶ 5.13. As this Court acknowledged, even if it "may disagree with the arbitrator's conclusions, such conclusions must stand," because the "arbitrator's factual findings or contractual interpretations" did not "exceed[ ] his authority." DE 19 at 17. In any event, the NFL counsel's argument at the hearing was not to the contrary. She merely argued that Collins's latest discipline of a five-game suspension was warranted because he had previously been "written up" for a four-game suspension. *See* Tr. 14:22-18:1. Although Collins quibbles with the Arbitrator's use and meaning of the word "received," that is merely a collateral attack on the Arbitrator's findings that are beyond judicial review because "it is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained." *Brady*, 820 F.3d at 536.

Moreover, as this Court explained, "[w]hile Collins may now disagree as to the accuracy of the NFL's statements at the Hearing, Collins did not timely raise this issue before the person who had [the] authority to factually decide it: the arbitrator." DE 19 at 19. The Court was unwilling "to find that the arbitrator—privy to all the evidence in the case—was played by the NFL." DE 19 at 18. Nor, as a matter of law, is there any basis to do so now. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir.

2004) (noting, even under Federal Arbitration Act, award cannot be overturned if fraud was "discoverable upon the exercise of due diligence before or during the arbitration"); *Wanken v. Wanken*, 451 F. App'x 319, 322 (5th Cir. 2011) (refusing to vacate award where plaintiff was aware of the alleged false testimony at the time of the hearing).

### B. Collins Failed To State A Claim For Fraudulent Misrepresentation

Collins's fraudulent misrepresentation claim also fails both because his claim is preempted by the LMRA and does not satisfy the heightened pleading requirements under Rule 9(b) for a fraud claim in any event.

### 1. Collins's Fraudulent Misrepresentation Claim Is Preempted by the LMRA.

This Court already has acknowledged that "Collins's claims are likely preempted by the LMRA." DE 19 at 11. Section 301 of the LMRA preempts any state law claim that "requires analysis of the terms of a labor agreement." *Id.* (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11, 213, 220 (1985)). It is well-established that Section 301 preempts fraudulent misrepresentation claims where the alleged "fraudulent or other tortious conduct by the employers and union would still involve questions relating to what the parties to a labor agreement agreed." *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 286 (5th Cir. 1988).

For example, in *Holmes v. NFL*, the district court dismissed a player's complaint alleging various Texas state law claims (including fraud) based upon the League's handling of his positive test under the Policy and the player's subsequent appeal. 939 F. Supp. at 526-28. The court agreed that the player's state law claims were preempted because they "all flow from, and relate to, actions [the NFL and its member clubs] undertook in accordance with the express terms of the Drug Program," and thus "their resolution depends entirely upon the interpretation of the CBA." *Id.* at 526.

On its face, Collins's Original Petition makes clear that his fraudulent misrepresentation claim is "inextricably intertwined" and "substantially dependent" on the terms of the collectively-bargained Policy.  He contends that the Arbitrator improperly "upheld the five (5) game suspension imposed on Mr. Collins pursuant to Section 1.3.3 of the Policy" based on inaccurate statements made by the NFLMC at the hearing.  DE 3 ¶¶ 52-58.  Whether these alleged misrepresentations changed the outcome of the arbitration depends, at a minimum, on the Arbitrator's interpretation of the Policy's provisions regarding the appropriate grounds for suspension or banishment.  Because "a central tenet of federal labor-contract law under § 301 [is] that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance," state law claims such as Collins's must be dismissed to "preserve[] the central role of arbitration in our system of industrial self-government."  *Allis-Chalmers*, 471 U.S. at 219-20; *see also, e.g.*, *Williams*, 582 F.3d at 881 (fraudulent misrepresentation claim "preempted because the Players cannot demonstrate the requisite reasonable reliance to prevail on their claims without resorting to the CBA and the Policy.").

### 2. Collins Did Not Plead Sufficient Facts to Establish a Claim For Fraudulent Misrepresentation Even If The Claim Were Not Preempted.

To establish fraudulent misrepresentation under Texas law, a plaintiff must show that: "(1) the defendant made a false, material representation; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury."  *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496-97 (Tex. 2019).  Here, Collins has not pled sufficient facts to demonstrate that the NFL made any "false" statements at the arbitration hearing,

that Collins "justifiably relied" on the statements, or that the alleged misrepresentations were material.

Collins contends that the statements the NFLMC made at his arbitration hearing about his prior four-game suspension were "false" because he was never actually suspended. *See* DE 3 ¶¶ 38-40, 43, 60-61. But as Collins's Original Petition demonstrates, counsel for the NFLMC stated only that Collins was "written up for" a four-game suspension. *See id.* ¶ 53. This Court previously rejected Collins's claim, noting his allegations about "the NFL's statements made during the Hearing—statements based on a letter of which neither side disputes the accuracy—are patently untrue." DE 19 at 19. Because "[a] statement that is true cannot be the basis of a fraud claim," Collins's claim fails as a matter of law. *Id.* (citing *Collective Asset Partners LLC v. Schaumburg*, 432 S.W.3d 435, 443 (Tex. App.—Dallas 2014)); *Najar v. Chertoff*, No. 9:07-CV-150-TH, 2008 WL 11347939, at *3 (E.D. Tex. Mar. 31, 2008) ("[C]onclusory allegations and unwarranted factual inferences or legal conclusions are not accepted as true.").

Moreover, Collins has not pled any facts to demonstrate *justifiable* reliance on the alleged misrepresentations. As this Court found, Collins was well-aware that he did not actually serve a four-game suspension but "did not raise this issue before the person who had the authority to factually decide it: the arbitrator." DE 19 at 20. His failure to do so is fatal to his claim. *Id.* ("[A] plaintiff may not 'blindly rely on a representation by a defendant' when the plaintiff's knowledge, experience, and background alert it to investigate the defendant's representations before acting in reliance on those representations" (quoting *Barrow-Shaver Res. Co.*, 590 S.W.3d at 497)); *see also Cypress Home Care, Inc. v. Qlarant Integrity Sols., LLC*, No. 5:19-CV-00042-RWS, 2020 WL 10317441, at *3 (E.D. Tex. July 2, 2020), *reconsideration denied*, 2021 WL 2792351 (E.D. Tex.

Jan. 7, 2021) ("It is well established that "[t]he recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false, or its falsity is obvious to him.").

Finally, there are no allegations or evidence that the purported misrepresentations were "material" or that the Arbitrator relied on them in reaching his decision.  Counsel's statements at the hearing were argument, not evidence, and, as this Court pointed out, the Arbitrator found only that "Mr. Collins previously had *received* a four-game suspension based on prior conduct" not that that he *served* it.  *See* DE 19 at 19 (citing Award ¶ 5.13) (emphasis added).  Indeed, "even if Collins were accurate in his contention that the NFL misrepresented his prior serving of a four-game suspension, Collins cannot show a substantial likelihood that the arbitrator relied on any misrepresentation."  *Id.*  For that reason, the Court was unwilling to second-guess the Arbitrator, nor should it now.  Accordingly, Collins's fraudulent misrepresentation claim must be dismissed. *See Mason v. Bank of Am., Nat. Ass'n*, No. 4:12CV291, 2013 WL 1313773, at *5 (E.D. Tex. Feb. 25, 2013), *report and recommendation adopted*, 2013 WL 1313769 (E.D. Tex. Mar. 28, 2013) (dismissing fraudulent misrepresentation claim where plaintiff failed to demonstrate justifiable reliance); *Martin v. Wells Fargo Bank, N.A.*, No. 4:11CV442, 2013 WL 694009, at *5 (E.D. Tex. Feb. 26, 2013) (same).

### C.  Collins Failed To State A Claim For A Declaratory Judgment and For Temporary Injunctive Relief

Finally, Collins failed to state a claim under the Declaratory Judgment Act ("DJA")[2] and for temporary injunctive relief because neither is a "claim" at all.  As this Court recognized in its October 12 Order, the DJA is a procedural device that creates no substantive rights and "is not an

---

[2] Although Collins originally brought his claim under the Texas DJA, when a case is removed to federal court, the federal court applies the federal DJA.  *See* DE 19 at 21 (citing *Smith v. Select Portfolio Servicing, Inc.*, No. 4:17-CV-753, 2018 WL 6696673, at *15 (E.D. Tex. Dec. 20, 2018)).

independent source of federal jurisdiction." DE 19 at 21 (citing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983)); *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *Maxwell v. Frost Bank*, No. 4:16-CV-00342-ALM-CAN, 2016 U.S. Dist. LEXIS 183438, at *25 (E.D. Tex. Dec. 23, 2016). The availability of a declaratory judgment depends entirely on "the underlying cause of action that is actually litigated in a declaratory judgment action." DE 19 at 21 (quoting *Basye v. Wells Fargo Bank, N.A.*, No. 3-12-CV-4098-K, 2013 WL 2110043, at *4 (N.D. Tex. May 16, 2013)). Because "[t]he declarations Collins seeks are entirely derivative of his other claims," his declaratory judgment request falls with his substantive claims. DE 19 at 21. And because his "substantive claims fail to state a cause of action upon which relief can be granted," Collins "cannot prevail on a claim for declaratory judgment." *Id.* at 21.

The same argument applies with equal force to Collins's "claim" for temporary injunctive relief, which is moot in any event given this Court's October 12 Order denying Collins's TRO Motion. *See* DE 19; *Cavada v. Bank of Am., N.A.*, No. A-14-CV-00938-LY-ML, 2015 WL 3480380, at *7 (W.D. Tex. June 2, 2015) ("[A] request for injunctive relief is not considered an independent 'cause of action,' but rather a remedy sought to redress the wrongs alleged in the underlying substantive claim.").

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss in its entirety and dismiss all claims in Plaintiff's Original Petition (DE 3).

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

  */s/ Eric Gambrell*
Eric Gambrell
egambrell@akingump.com
Texas Bar No. 00790735

15

Patrick G. O'Brien
pobrien@akingump.com
Texas Bar No. 24046541
2300 Field Street, Suite 1800
Dallas, TX  75201
Telephone:  (214) 969-2800
Facsimile:  (214) 969-4343

Daniel L. Nash
*Pro hac vice*
dnash@akingump.com
Stacey R. Eisenstein
*Pro hac vice*
seisenstein@akingump.com
2001 K Street, NW
Washington, DC  20006
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

ATTORNEYS FOR DEFENDANT
NATIONAL FOOTBALL LEAGUE,
NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL, AND
ROGER GOODELL

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2022, I electronically filed the foregoing document with the clerk of Court for the United States District Court for the Eastern District of Texas using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record.

*/s/ Eric Gambrell*
Eric Gambrell

17